IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

NELSON TORRES-VAZQUEZ et als,

Plaintiffs,

v.

COMMERCIAL UNION INS. CO., et als,

Defendants.

CIVIL NO.  99-2131 (DRD)

## REPORT AND RECOMMENDATION

### INTRODUCTION

On October 6, 1999, plaintiffs filed a Complaint against San Juan International Terminal, Inc. ("SJIT"), San Juan International Transport, Inc. ("S.J. In't T."), Holt Hauling and Warehousing Systems, Inc. ("HHWS") and the Holt Group, Inc. ("Holt") seeking compensation for damages alleging on October 10, 1998, plaintiff Nelson Torres-Vázquez, while employed as a driver for Sea Land Services Inc. ("Sea Land"), suffered personal injuries as a result of the negligent acts of defendants.  (Docket No. 1).

On March 21, 2001, SJIT filed a Voluntary Petition for Bankruptcy in the United States Bankruptcy Court in Delaware.  (Docket No. 26).   Consequently, this case was inactive until January 3, 2002, when plaintiffs filed a motion for leave to amend the complaint to bring the insurers of SJIT and for the issuance of summons.  (Docket Nos. 29 and 30).   On August 30, 2002, these requests were granted.   (Docket No. 33).   On the same day, an Amended Complaint was filed against Commercial Union Insurance Company, Reliance Insurance Company, Royal Insurance Company of America ("Royal"), New York Marine and General

Insurance Company, and American Home Assurance Company. (Docket Nos. 33 and 34). A Second Amended Complaint was filed on April 1, 2003 adding Lexington Insurance Company as a defendant. (Docket No. 58). Plaintiffs have voluntary dismissed the Amended Complaints against each of these insurers except for Royal, insurer of SJIT. (Docket Nos. 37, 41, 56, 65 and 69).

In the Second Amended Complaint, plaintiffs allege on October 10, 1998, plaintiff Torres-Vázquez, a 44 years old longshoreman, suffered personal injuries at the San Juan Port while performing his duties as a truck driver for this employer Sea Land. (Docket No. 58, ¶ 11). Plaintiff Torres-Vázquez' job on that particular day was to carry containers to the area of the vessel EXPEDITION to allow the ship to be loaded through cranes installed in the loading platform. (Docket No. 58, ¶12). The vessel EXPEDITION was owned by Sea Land. (Docket No. 58 ¶ 16). Once the container was placed behind the crane, the crane operator picked up the cargo and proceeded with the loading by lifting the container and moving it inside the ship for the proper stowing. (Docket No. 58, ¶12). A checker was placed in the area to direct the operation conducted by the crane operator. (Docket No. 58, ¶13). Once in the area, the container attached to the chassis, which was also connected to the truck, had to be released from the truck's chassis and lifted by the crane operator. (Docket No. 58, ¶14). On October 10, 1998, the crane was operated by an employee of SJIT. The crane grabbed the container while it was still attached to the truck in which plaintiff Torres-Vázquez was sitting, lifting the container and the truck approximately twenty (20) feet into the air until the truck separated from

the container causing the truck to hit the pavement with Torres-Vázquez still inside.  (Docket No. 58, ¶16).

Plaintiffs invoke jurisdiction by virtue of 28 U.S.C. § 1331 (federal question), § 1332 (diversity of citizenship -  amount in controversy), § 1333(1) (admiralty and maritime) and §1337 (commerce and antitrust regulations - amount in controversy); the Admiralty Extension Act of 1948, 46 U.S.C. § 740; and Article III, § 2 of the United States Constitution.  Plaintiffs claim supplemental jurisdiction based on 28 U.S.C. § 1367.

On September 24, 2004, Royal filed a Motion to Dismiss and Memorandum of Law in support thereof, pursuant to FRCP 12(b)(6), claiming: 1) lack of admiralty or maritime jurisdiction under 28 U.S.C. § 1333(1),  46 U.S.C. § 740 or Article III, § 2 of the Constitution of the United States; 2) lack of factual allegations of intentional infliction of emotional distress; and 3) plaintiffs' claims are time-barred. (Docket No. 128).

On November 8, 2004, plaintiffs filed their Opposition to the Motion to Dismiss contending there is admiralty as well as diversity jurisdiction; there is no lack of factual allegations of intentional infliction of emotional distress; and the claims are not time-barred. (Docket No. 144).  On November 19, 2004, Royal filed a Reply to the Opposition.  (Docket No. 145).

The Motion to Dismiss and related pleadings were referred to this Magistrate Judge for Report and Recommendation.  (Docket No. 143)[1].

---

[1] Royal's Motion for Summary Judgment (Docket No. 127) was also referred by the Court to this Magistrate Judge.  A separate report and recommendation will be issued addressing the motion for summary judgment.

## MOTION TO DISMISS AND STANDARD UNDER RULE 12(B)(6).

Under Rule 12(b)(6) of the Federal Rules of Civil Procedure, a party may, in response to an initial pleading, file a motion to dismiss the complaint for failure to state a claim upon which relief can be granted.  Still, "a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Conley v. Gibson, 355 U.S. 41, 45-46, 78 S.Ct. 99, 102 (1957); *see* Miranda v. Ponce Fed. Bank, 948 F.2d 41 (1st Cir.1991).

The Court must accept as true "all well-pleaded factual averments and indulg[e] all reasonable inferences in the plaintiff's favor." Aulson v. Blanchard, 83 F.3d 1, 3 (1st Cir. 1996). A complaint must set forth "factual allegations, either direct or inferential, regarding each material element necessary to sustain recovery under some actionable theory." Romero-Barceló v. Hernández-Agosto, 75 F.3d 23, 28 n. 2 (1st Cir. 1996) (*quoting* Gooley v. Mobil Oil Corp., 851 F.2d 513, 514 (1st Cir. 1988)). The Court need not accept a complaint's " 'bald assertions' or legal conclusions" when assessing a motion to dismiss.  Abbott, III v. United States, 144 F.3d 1, 2 (1st Cir. 1998) (*citing* Shaw v. Digital Equip. Corp., 82 F.3d 1194, 1216 (1st Cir. 1996)).

## ANALYSIS

**I.    Admiralty Jurisdiction.**

i.    Legal Standards.

"The district courts shall have original jurisdiction, exclusive of the States, of: (1) [a]ny civil case of admiralty or maritime jurisdiction, saving to suitors in all cases all other remedies to which they are otherwise entitled...." 28 U.S.C. § 1333.  "The admiralty and maritime

jurisdiction of the United States shall extend to and include all cases of damage or injury, to

person or property, caused by a vessel on navigable water, notwithstanding that such damage

or injury be done or consummated on land...."  46 U .S.C. § 740.

The  U.S.  Supreme  Court  has  recognized  that,  in  order  to  invoke  maritime  tort

jurisdiction two (2) requirements must be met, namely location and connection or nexus to a

maritime activity.  See Executive Jet Aviation, Inc. v. City of Cleveland, 409 U.S. 249, 93 S.Ct.

493 (1972); Foremost Ins. Co. v. Richardson, 457 U.S. 668, 102 S.Ct. 2654 (1982); Sisson v.

Ruby, 497 U.S. 358, 110 S.Ct. 2892 (1990). See also, Jerome B. Grubart, Inc. v. Great Lakes

Dredge & Dock Company, 513 U.S. 527, 115 S.Ct. 1043 (1995);  Tokyo Marine and Fire Ins.

Co., Ltd. v. Perez & Cia de Puerto Rico, Inc., 893 F.Supp. 132, 134 (D.P.R. 1995).

In  Great Lakes,  the  U.S.  Supreme  Court  reaffirmed  the  continued  validity  of  the

admiralty tort jurisdiction test as established by the above cited cases, even where maritime

jurisdiction is predicated on the Extension of Admiralty Jurisdiction Act. The purpose of the

Extension of Admiralty Jurisdiction Act was to end concern over the sometimes confusing line

between land and water, by investing admiralty with jurisdiction over all cases where the injury

was caused by a ship or other vessel on navigable water, even if such injury occurred on land.

Great Lakes, 513 U.S. 527.   The Court expressly held a party seeking to invoke federal

admiralty jurisdiction pursuant to 28 U.S.C. § 1333 over a tort claim must satisfy conditions

both of location and of connection with maritime activity: "[a] court applying the location test

must determine whether the tort occurred on navigable water or whether injury suffered on land

was caused by a vessel on navigable water." Id. at 533.

On the other hand, the connection test raises two issues. First, a court "must assess the general features of the type of incident involved, to determine whether the incident has a potentially disruptive impact on maritime commerce." Id. Second, "a court must determine whether the general character of the activity giving rise to the incident shows a substantial relationship to traditional maritime activity" Id; see Tokyo, 893 F.Supp at 134.

The Court of Appeals for the First Circuit has clarified that under Grubart, maritime jurisdiction is found only where the location and the connection prongs are met; one by itself will not suffice.  Florio v. Olson, 129 F.3d 678, 680 (1st Cir. 1997).

For purposes of the location test, "appurtenances" attached to a vessel are deemed part of the vessel itself. Id. at 535. See also Victory Carriers, Inc. v. Law, 404 U.S. 202 (1971); Egorov, Puchinsky, Afanasiev & Juring v. Terriberry, Carroll & Yancey, 183 F.3d 453, 456 (5th Cir. 1999) (injury must be caused by a vessel).

In Victory Carriers, 404 U.S. at 203, a longshoreman was injured while driving a forklift owned by his employer and in the process of moving a load from the dock to a point where it could be loaded on to a ship by the ship's own equipment.  In concluding the claim was governed by state law, the Court noted the injured longshoreman "was not injured by equipment that was part of the ship's usual gear or that was stored on board, the equipment that injured him was in no way attached to the ship, the forklift was not under the control of the ship or its crew, and the accident did not occur aboard ship or on the gangplank." Id. at 213-14.

ii.     Discussion.

Royal seeks to dismiss Count One of plaintiff's Second Amended Complaint entitled "Admiralty Extension Act of 1948 (46 U.S.C. Sec. 740) and Article III, Sec. 2 of the United

States Constitution" for failure to state a claim because the above indicated statutory and constitutional provisions do not create an independent cause of action and the facts as alleged do not confer this Court with admiralty jurisdiction.  In addition, Royal seeks dismissal of all references in the Second Amended Complaint to the maritime doctrine of "unseaworthiness" because this doctrine applies only to a vessel or its owner, and they are not parties to this action. (Docket No. 128).

In essence, Royal claims, pursuant to the following facts alleged in the original complaint and the Second Amended Complaint, there is no maritime jurisdiction because the requirements for such claim are not met, namely: 1)Torres-Vázquez' "job on that particular day was to carry containers to the ship's area inside the port to allow the ship to be loaded through the cranes installed in the loading platform."  (Docket No. 1, ¶¶ 19 and 25; and Docket No. 58, ¶¶ 12 and 18); 2) the vessel being loaded, the EXPEDITION, was owned by Sea-Land which is not presently a party to this action.   (Docket No. 1, ¶ 23; and Docket No. 58, ¶ 16); 3) "[t]he crane involved in the accident was leased, operated and maintained exclusively by SJIT, SJ In't T, HHWS and Holt.  These companies have complete control over the instrumentality causing the injury and used its own crew members to load the cargo."   (Docket No. 1, ¶¶ 33 and 34; and Docket No. 58, ¶ 19).

Based on these factual allegations, Royal contends the alleged injury occurred on land and not on navigable waters and was not caused by the EXPEDITION or any appurtenances or crew.   Rather, Royal asserts the injury was caused by a land based crane operated, maintained and under the complete control of SJIT, SJ In't T, HHWS and Holt and not controlled by the vessel.  The land based crane is not an appurtenance of the vessel nor part of

its gear.  Finally, Royal alleges the loading and unloading of a vessel does not confer admiralty jurisdiction.   As such, there is no maritime jurisdiction.

In response, plaintiffs assert maritime jurisdiction exists over their claims by virtue of the Extension in Admiralty Jurisdiction Act ("the Act"), 46 U.S.C. § 740.  Plaintiffs also allege there is diversity jurisdiction in this case and the inclusion of unseaworthiness is not prejudicial to defendant despite the fact that unseaworthiness is a form of strict liability.    (Docket No. 144).

In sum, plaintiffs claim in their Opposition to the Motion to Dismiss the injuries suffered by Torres-Vázquez were caused by the vessel EXPEDITION, its crew and the pier-based crane because, even though the crane operator was employed by SJIT, at the time of the accident he was performing duties for the owner of the vessel (Sea-Land) and was a member of its crew. Plaintiffs allege the crane was part of the vessel's usual gear.  As to the nexus test, plaintiffs aver that by loading cargo into the vessel, defendants were performing an activity traditionally performed by vessels and a significant potential impact on maritime commerce exists.  As such, plaintiffs aver the typical elements of a maritime cause of action are present, namely: Torres-Vázquez was injured by the equipment crane that was part of the vessel's usual gear; the crane was being used to load the vessel and belonged to the vessel owner; the crane was under the control of the vessel and its crew; and the accident occurred between the vessel and the dock while the vessel was being loaded.

A review of the allegations in plaintiffs' complaint and Second Amended Complaint does not support their argument that the Extension of Admiralty Jurisdiction Act provides grounds for jurisdiction in this case, as argued in the Opposition to the Motion to Dismiss.  We explain.

To determine whether maritime jurisdiction is appropriate in this case, we must examine whether the injury suffered by Torres-Vázquez satisfies the location requirement.   It is undisputed the alleged tort did not occur on navigable waters.   Therefore, for admiralty jurisdiction to exist, Torres-Vázquez' injury must have been "caused by" the vessel EXPEDITION.  For purposes of the locality test, an "appurtenance" to a vessel is treated as part of the vessel itself.  Grubart, 513 U.S. at 535.  We must determine, therefore, whether Torres-Vázquez' injuries were caused by an appurtenance to the EXPEDITION.

Turning to the facts of this case as alleged in the Complaint and the Second Amended Complaint, it is clear Torres-Vázquez was injured by a land based crane while he was working on the pier.   It is also evident the crane was a land-based crane which was not an appurtenance to the EXPEDITION.  The crane was neither mounted in or in any way physically connected to the vessel.  The crane was not aboard the EXPEDITION.  Furthermore, plaintiffs admit in their Opposition to the Motion to Dismiss that the crane was "pier-based."  (Docket No. 144, pp. 14, 16, 17).

Additionally, pursuant to plaintiffs' own allegations in the Complaint and Second Amended Complaint, the crane was never under the control of the EXPEDITION personnel. The crane was "leased, operated and maintained exclusively by SJIT, SJ Int'l T and HHWS and Holt.  These companies have complete control over the instrumentality causing the injury and used its own crew members to load the cargo." (Docket No. 1,  ¶¶ 33 and 34; Docket No. 58, ¶ 19; and Docket No. 144, pp. 14-15).  In Plaintiffs' Opposition to the Motion to Dismiss, they clarify the crane was "owned by SJIT but at the time of the accident was in total control of Sea

Land." (Docket No. 144, pp. 15-16).  Therefore, it is clear the crane was under the control of Sea Land and SJIT and not under the control of the vessel EXPEDITION.

In sum, the crane was not part of the vessel's standard equipment and was not an appurtenance of the vessel because it was not stored on board or part of the ship's usual gear, it was not attached to the ship in any way, it was not owned nor under the control of the EXPEDITION or its crew, and Torres-Vázquez' injuries did not occur aboard the ship or on its gangplank.  See Victory Carriers, 404 U.S. at 213-14.

In view of the foregoing, the location requirement to confer maritime jurisdiction is not met in this case "because no vessel can be said to have caused [Torres-Vázquez] injuries." Florio, 129 F.3d at 681.  Therefore, we need not address whether the "connection" requirement has been satisfied.  Id. at 680 (maritime jurisdiction is found only where the location and the connection prongs are met; one by itself will not suffice).

Accordingly, maritime jurisdiction is lacking in this case.  Nonetheless, this determination does not end our inquiry because, as explained below, this Court has jurisdiction to entertain this claim under other unchallenged jurisdictional grounds.

iii.   Unseaworthiness.

As previously indicated, Royal has requested that all allegations of unseaworthiness included in the Complaint and Amended Complaints be stricken because neither the vessel nor its owners are parties to this action.  Moreover, Royal claims that, since the doctrine of unseaworthiness is based on strict liability, its inclusion in the Complaint, Amended Complaint and Second Amended Complaint is highly prejudicial.  (Docket No. 128, pp. 12-13).

Plaintiffs respond to this argument indicating unseaworthiness is a legal term constantly used in the application of federal maritime law to alleged torts regardless whether negligence or unseaworthiness is claimed and its inclusion is not prejudicial.  (Docket No. 144, p. 18).

The U.S. Supreme Court has expressly authorized a claim for unseaworthiness in admiralty jurisdiction. See Seas Shipping Co. v. Sieracki, 328 U.S. 85, 66 S.Ct. 872 (1946). Under federal admiralty law, a shipowner owes its crew a seaworthy vessel. Id. at 90. To satisfy this obligation, the vessel must be reasonably fit for its intended use. See Mitchell v. Trawler Racer, Inc., 362 U.S. 539, 550, 80 S.Ct. 926 (1960); Ferrara v. A. & V. Fishing, Inc., 99 F.3d 449, 453 (1st Cir. 1996).   The ship must be "one that is staunch and strong, that is fitted out with all proper equipment and in good order, and that carries a sufficient and competent crew and complement of officers." Gutiérrez v. Waterman S.S. Corp., 373 U.S. 206, 216-17, 83 S.Ct. 1185 (1963). A shipowner is absolutely liable for injuries arising from the vessel's unseaworthiness. See Mitchell, 362 U.S. at 549; Seas Shipping, 328 U.S. at 94.

Thus, unseaworthiness is a maritime remedy which was established "simply by showing that some condition or appurtenance on board the vessel at the time of the accident was unreasonably hazardous, even if the stevedore-employer was the sole cause of the hazard." Morehead v. Atkinson-Kiewit, J/V, 97 F.3d 603, 608 (1st Cir. 1996).

As previously indicated, admiralty jurisdiction in this case is lacking because the location requirement is not met. Therefore, to the extent plaintiffs' pleading assert a claim for unseaworthiness or lack of care, it is recommended these claims of unseaworthiness be stricken.

## II.    **Diversity Jurisdiction.**

Federal courts enjoy diversity jurisdiction under 28 U.S.C. § 1332 over claims in excess of $75,000 when complete diversity of citizenship exists between the parties. Diversity jurisdiction exists between "citizens of a state and citizens or subjects of a foreign state" provided of course, that the jurisdictional amount requirement is also met. 28 U.S.C. § 1332(a)(2). Whenever the defendant properly challenges plaintiffs' allegations of jurisdictional facts, however, the plaintiffs bear the burden of supporting the allegations with competent proof. McNutt v. General Motors Acceptance Corp., 298 U.S. 178, 56 S.Ct. 780 (1936); Thomson v. Gaskill, 315 U.S. 442, 62 S.Ct. 673 (1942).

Plaintiffs invoke jurisdiction in their original Complaint and in the Second Amended Complaint by virtue of 28 U.S.C. § 1331 (federal question), § 1332 (diversity of citizenship - amount in controversy), § 1333(1) (admiralty and maritime) and §1337 (commerce and antitrust regulations - amount in controversy); the Admiralty Extension Act of 1948, 46 U.S.C. § 740; and Article III, § 2 of the United States Constitution.  Plaintiffs claim supplemental jurisdiction based on 28 U.S.C. § 1367.

In its Motion to Dismiss, Royal only challenges the admiralty jurisdiction and does not question the diversity of citizenship jurisdiction nor the other jurisdictional grounds raised by plaintiffs.

In the Opposition to the Motion to Dismiss, plaintiffs clarify this Court has jurisdiction to entertain this case because, besides admiralty jurisdiction, this Court has jurisdiction pursuant to diversity of citizenship of the parties under 28 U.S.C. § 1332.  (Docket No. 58, ¶ 3).

Plaintiffs claim they have properly alleged the elements of diversity jurisdiction, which Royal has not challenged.

A review of Royal's Reply to Plaintiffs' Opposition to the Motion to Dismiss shows Royal, as it did in its Motion to Dismiss, does not question or challenge this Courts' jurisdiction under diversity of citizenship and the other jurisdictional grounds raised by plaintiffs.

Thus, taking plaintiffs' allegations as true, it should be concluded this action is within the diversity jurisdiction of this Court. Plaintiffs have alleged facts sufficient to satisfy the diversity jurisdiction requirements. Accordingly, this claim should be entertained under diversity jurisdiction, pursuant to 28 U.S.C. § 1332.

## III.   **Second Amended Complaint Properly States a Claim for Infliction of Emotional Distress.**

Royal contends plaintiffs fail to state a claim for intentional infliction of emotional distress. "An emotional distress claim . . . requires that the plaintiff establish three elements: (1) that the conduct of the defendant was extreme and outrageous; (2) that the emotional distress suffered was severe; and (3) that the defendant desired to inflict severe emotional distress or knew that such distress would be substantially certain to result from the conduct." Morris v. Dillard Dep't Stores, 277 F.3d 743, 756 (5th Cir. 2001).

Royal asserts plaintiffs' Second Amended Complaint describes actions which, even if accepted as true, cannot rise to the level of outrageousness necessary to state a claim for intentional infliction of emotional distress.

In Educadores Puertorriqueños en Acción v. Hernández, 367 F.3d 61 (1ST Cir. 2004), the First Circuit did away with the heightened pleading standard for civil right cases following the Supreme Court's decision in Swierkiewicz v. Sorema N.A., 534 U.S. 506 (2002).   The First Circuit stated as follows:

> The handwriting is on the wall.  Swierkiewicz has sounded the death knell for the imposition of a heightened pleading standard except in civil cases in which either a federal statute or a specific Civil Rule requires that result.  In all other cases, courts faced with the task of adjudicating motions to dismiss under Rule 12(b)(6) must apply notice pleading requirements of Rule 8(a)(2).  Educadores, 367 F.3d at 66.

Accordingly, a Complaint need only include "a short plain statement of the claim showing the pleader is entitled to relief," Fed. R.Civ.P. 8(a)(2), in order to "give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests."  Conley v. Gibson, 355 U.S. 41, 47 (1957).

Plaintiffs here allege that, due to defendant's actions, "plaintiffs became physically distraught and suffered severe emotional distress." (Docket No. 58, ¶ 42).  Although it remains to be seen whether plaintiffs will be able to prove intentional infliction of emotional distress, taking the Second Amended Complaint liberally and drawing all reasonable inferences in plaintiffs' favor, they are enough to state a claim for relief under Fed.R.Civ.P. 8(a)(2) for a claim of infliction of emotional distress.  These allegations, while sparse, are sufficient to appraise defendants of the nature of plaintiffs' claim, the facts upon which they are based, and adequately state a claim upon which relief could be granted.  Educadores, 367 F.3d at 61. Whether these acts and any other acts that may come out during the course of discovery meet

the threshold of *extreme and outrageous conduct* is more appropriately decided on a motion for summary judgment or at trial.  See Phelps v. Kapnolas, 308 F.3d 180, 186-87 (2nd Cir. 2002).

Accordingly, it is recommended Royal's Motion to Dismiss be DENIED as to this claim.

## IV.   **Claims Against Royal Are Not Time Barred**.

Royal alleges plaintiff Torres-Vázquez sustained personal injuries on October 10, 1998. (Docket No. 58, ¶¶ 11 and 12).  Royal was not served until January 2, 2003, more than four (4) years after the alleged incident.  (Docket No. 47).  Thus, Royal contends any direct action against it is untimely and must be dismissed.  (Docket No. 128, pp. 16-17).

Plaintiffs responded claiming the original claim against SJIT and its affiliates was timely filed within the one (1) year statute of limitation under Puerto Rico's law.  It is claimed that, as part of the discovery, plaintiffs requested information of the insurance companies but SJIT denied the existence of any insurance policy and later delayed the information on the insurance companies.  Once the information was provided, plaintiffs amended the complaint to include the insurance companies as defendants in this case.  Thus, when the original complaint was filed, the prescription term was interrupted against a tort-feasor not originally included in the complaint, namely Royal. (Docket No. 144, pp. 18-20).

Under Puerto Rico law, an action for damages for negligence must be commenced within one year of its accrual. 31 P.R. Laws Ann. § 5298(2). The Puerto Rico Supreme Court has construed this provision as incorporating a discovery rule. Villarini-García v. Hospital del Maestro, 8 F.3d 81, 84 (1st Cir. 1993). Thus, a claim accrues, and the one year period starts to

run, not at the time of the injury, but upon the discovery by the injured party of the injury and

of its author. Espada v. Lugo, 312 F.3d 1, 5 (1st Cir.2002)

In Tokyo Marine and Fire Ins. Co. Ltd. v. Perez & Cia., De Puerto Rico, Inc., 142 F.3d

1, 7 (1st Cir. 1998), the First Circuit ruled that under Puerto Rico law, insured defendant in tort

action was solidarily liable with its liability insurer, so that interruption of prescription as to

insurer also interrupted prescription as to insured. 31 L.P.R.A. §§ 5303, 5304.  Thus, the First

Circuit concluded that, if faced with the issue, the Puerto Rico Supreme Court would hold that

insured defendants and their insurance companies are solidarily liable for the acts of the insured.

As in the case of joint tortfeasors, the liability imposed by the Insurance Code upon insurers is

co-extensive with that of their insured, up to the limits of the policies in question. Id.

Should the statute of limitations be effectively interrupted, the full period begins anew.

The plaintiff bears the burden of proving that the statute of limitations has been tolled. Id.

Finally, the interruption of the tolling period against one co-defendant tolls the period for all

defendants who are jointly liable. Id. at 4; Arroyo v. Hospital de la Concepcion, 130 D.P.R. at

607-608, 1992 WL 755630; García Colón v. García Rinaldi, 340 F.Supp.2d 113, 123 (D.P.R.

2004).

Turning to this case, plaintiff Torres-Vázquez sustained personal injuries on October 10,

1998.   The original complaint against SJIT and its affiliates was filed on October 6, 1999.

(Docket No. 1).  Thus, the original complaint was timely filed.

The timely filing of the original complaint in this case against one tortfeasor (SJIT and

its affiliates) on October 6, 1999 interrupted the statute of limitations for all tortfeasors who are

jointly liable, including Royal. Tokyo Marine, 142 F.3d at 7; García Colón, 340 F.Supp 2d at 123 (if between the co-defendants there is a joint and several liability, the interruption against one the tortfeasors interrupts for all others).

Plaintiffs' allegations that, as part of the discovery, plaintiffs requested information of the insurance companies but SJIT denied the existence of any insurance policy and later delayed the information on the insurance companies are uncontested. Thus, we conclude the subsequent addition of Royal to this suit was timely because, once the information was provided, plaintiffs amended the complaint to include the insurance companies as defendants in this case.

Since the solidarity doctrine allows for the timely inclusion of a solidary tortfeasor, such as Royal, as long as the original claim is considered to be timely, the subsequent addition of an alleged tortfeasor would not be considered to be time barred. As such, Royal's claims this cause of action is time-barred is not substantiated and is opposed by the solidarity and joint liability expressed by § 1802 statute and by similarly situated jurisprudence above discussed. See, Tokyo Marine, 142 F.3d at 7; García Colón, 340 F.Supp 2d at 123.

Thus, it is recommended Royal's Motion to Dismiss be DENIED as to this claim.

## CONCLUSION

In view of the foregoing, it is recommended Royal's Motion to Dismiss be DENIED in its entirety.

IT IS SO RECOMMENDED.

Nelson Torres-Vázquez et al v. Commercial Union Ins. Co., et al
Civil No.  99-2131 (DRD)
Report and Recommendation
Page 18

The parties have ten (10) days to file any objections to this report and recommendation. Failure to file same within the specified time waives the right to appeal this order.  Henley Drilling Co. v. McGee, 36 F.3d 143, 150-151 (1st Cir. 1994); United States v. Valencia, 792 F.2d 4 (1st Cir. 1986).  See Paterson-Leitch Co. v. Mass. Mun. Wholesale Elec. Co., 840 F.2d 985, 991 (1st Cir. 1988) ("Systemic efficiencies would be frustrated and the magistrate's role reduced to that a mere dress rehearser if a party were allowed to feint and weave at the initial hearing, and save its knockout punch for the second round").

San Juan, Puerto Rico, this 20th day of December of 2004.


s/ CAMILLE L. VELEZ-RIVE
CAMILLE L. VELEZ-RIVE
UNITED STATES MAGISTRATE JUDGE