## UNITED STATES DISTRICT COURT
## DISTRICT OF PUERTO RICO

**NELSON TORRES VAZQUEZ,**
**MARIA FRANCISCA ADORNO SEIN,**
**NILSA IVELISSE TORRES ADORNO,**
**AND IRIS YOLANDA TORRES ADORNO**

Plaintiffs,

CIVIL NO.: 99-2131 (DRD)

vs.

**COMMERCIAL UNION INSURANCE CO.,**
**RELIANCE INSURANCE COMPANY, ROYAL**
**INSURANCE COMPANY OF AMERICA,**
**LEXINGTON INSURANCE COMPANY, NEW**
**YORK MARINE & GENERAL INSURANCE**
**COMPANY, AND AMERICAN HOME**
**ASSURANCE CO.**

Defendants

## <u>OPINION AND ORDER</u>

Plaintiffs, Nelson Torres Vazquez, Maria Francisca Adorno Sein, Nilsa Ivelissse Torres Adorno, and Iris Yolanda Torres Adorno ("Plaintiffs"), filed the instant case pursuant to this Court's jurisdiction based on sections 1331 (federal question), 1332 (diversity), 1333(1) (admiralty and maritime), and 1337 (commerce and antitrust regulations) of Title 28 of the United States Code.  (Docket No. 1).  On November 5th, 2004, the Court referred to Magistrate Judge Camille L. Velez Rive Defendant Royal Insurance Company of America's ("Royal") motions for summary judgment and for dismissal for a report and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B); FED.R.CIV.P. 72(b); and Local Rule 72.1(b).  (Docket No. 143 regarding Dockets Nos. 127, and 128).  The Magistrate filed her Report and Recommendation ("RR") on December 20th, 2004.  (Docket No. 147).  In her report, the magistrate recommends that the motion to

dismiss filed by Royal be denied in its entirety.  However, the Magistrate did not address the motion for summary judgment and specified that "a separate report and recommendation will be issued addressing the motion for summary judgment." Magistrate Judge Velez Rive's *Report and Recommendation*, Docket No. 147, at 3 n.1.  Both Plaintiffs and Royal filed their objections thereto on December 31st, 2004 within the time period allowed by the Court.  (Docket Nos. 148, and 149, respectively). Neither addressed the fact that the Magistrate chose not to enter into the merits of the motion for summary judgment in the RR.

After considering both parties' objections, and reviewing *de novo* the RR, the Court determines that Royal's motion to dismiss is hereby **DENIED IN PART AND GRANTED IN PART**.

# I

## MAGISTRATE REPORT AND RECOMMENDATION

The District Court may refer dispositive motions to a United States Magistrate Judge for a Report and Recommendation. 28 U.S.C. § 636(b)(1)(B) (1993); FED.R.CIV. P. 72(b); Rule Local Rule 72.1(b). *See* Mathews v. Weber, 423 U.S. 261 (1976).  An adversely affected party may contest the Magistrate's report and recommendation by filing its objections within ten (10) days after being served a copy thereof.  *See* Local Rule 72.2(a)-(b); FED.R.CIV. P. 72(b). Moreover, 28 U.S.C. § 636(b)(1), where pertinent, provides that:

> Within ten days of being served with a copy, any party may serve and file written objections to such proposed findings and recommendations as provided by rules of court. A judge of the court shall make a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made. A judge of the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate.

*See* 28 U.S.C. § 636(b)(1).

Provided that both parties have objected the determinations addressed by the Magistrate Judge, the Court shall make a <u>de novo</u> determination of the RR.

## II

## MOTIONS TO DISMISS

When deciding a Motion to Dismiss under Federal Rule of Civil Procedure 12(b)(6) the Court must accept as true all well-pleaded factual claims, and indulge all reasonable inferences in Plaintiffs' favor. *See* <u>Doyle v. Hasbro, Inc.</u>, 103 F.3d 186, 190 (1st Cir. 1996). Dismissal under Federal Rule of Civil Procedure 12(b)(6) is appropriate if the facts alleged, taken as true, do not justify recovery. *See* <u>Aulson v. Blanchard</u>, 83 F.3d 1, 3 (1st Cir. 1996). In order to survive a motion to dismiss, Plaintiff must set forth "factual allegations, either direct or inferential, regarding each material element necessary to sustain recovery." *See* <u>Gooly v. Mobil Oil Corp.</u> 851 F.2d 513, 515 (1st Cir. 1988).

Although all inferences must be made in Plaintiffs' favor, the Court need not accept "bald assertions, unsupportable conclusions, periphrastic circumlocutions, and the like." *See* <u>Aulson</u>, 83 F.3d at 3. Moreover, when considering a motion to dismiss under Rule 12(b)(6) the Court must limit its focus to the allegations of the complaint. *See* <u>Litton Indus., Inc. v. Colon</u>, 587 F.2d 70, 74 (1st Cir. 1978). Specifically, the inquiry should be "whether a liberal reading of [the complaint] can reasonably admit of a claim . . . ." <u>Id.</u>; *see also* <u>Doyle</u>, 103 F.3d at 190.

The First Circuit has required plaintiffs to "set forth in their complaint 'factual allegations, either direct or inferential, regarding each material element necessary to sustain recovery.'" <u>Dartmouth Review v. Dartmouth Coll.</u>, 889 F.2d 13, 16 (1st Cir. 1989) (*citing* <u>Gooley v. Mobil</u>

Oil Corp., 851 F.2d 513, 515 (1st Cir. 1988)). Additionally, where defendant's improper intent is an essential element of the claim, the First Circuit insisted that plaintiffs provide "*specific, nonconclusory factual* allegations giving rise to a reasonable inference of [ ] intent." Judge v. City of Lowell, 160 F.3d 67, 75 (1st Cir. 1998) (*emphasis in original*).

Furthermore, the Supreme Court has made clear, via Swierkiewicz v. Sorema N.A., 534 U.S. 506, 122 S.Ct. 992, 152 L.Ed.2d 1 (2002), that a complaint may be legally sufficient with Rule 8(a) despite the fact that it may not address each element of every claim. That is to say, the fact that some allegations are legal conclusions rather than facts will not necessarily be fatal to plaintiff's claims. *See* Swierkiewicz, 122 S.Ct. at 999; *see also* Higgs v. Carver, 286 F.3d 437, 439 (7th Cir. 2002) (*citing* Swierkiewicz, "[a] complaint that complies with the federal rules of civil procedure cannot be dismissed on the ground that it is conclusory or fails to allege facts."). Plaintiff, thus, a complaint need only "give the defendant fair notice of what [the] claim is and the grounds upon which it rests." Swierkiewicz, 122 S.Ct. at 998. (*quoting* Conley v. Gibson, 355 U.S. 41, 47, 78 S.Ct. 99, 2 L.Ed.2d. 80 (1957)).

Particularly, this Court agrees with the District Court's analysis of this very issue expressed in Greenier v. Pace Local No. 1188, 201 F.Supp.2d 172, 177 (D.Maine 2002) stating in pertinent part that "[t]o the extent that the Court is unable to reconcile pre-existing First Circuit precedent with the Supreme Court's holding in an intervening case, the Court must follow the dictates of the Supreme Court." *See* Stewart v. Dutra Constr. Co., 230 F.3d 461, 467 (1st Cir. 2000) ("[P]rior circuit precedent will yield to a contrary decision of the Supreme Court[.]"); *see also* Educadores Puertorriquenos en Accion v. Hernandez, 367 F.3d 61, 68 (1st Cir. 2004). As a result, this Court examines whether the Complaint "contains enough information to put Defendant

on notice of the nature of Plaintiff's claims." <u>Greenier</u>, 201 F.Supp.2d at 177.

<strong>III</strong>

<strong>FACTUAL AND PROCEDURAL BACKGROUND</strong>

On October 6, 1999, Plaintiffs filed a Complaint against San Juan International Terminal, Inc. ("SJIT"), San Juan International Transport Inc. ("SJ Int'l T"), Holt Hauling and Warehousing Systems, Inc. ("HHWS") and the Holt Group, Inc. ("Holt") seeking compensation for damages that Plaintiff Nelson Torres Vazquez ("Torres") allegedly suffered on October 10, 1998 while employed as a driver for Sea Land Services, Inc. ("Sea Land"). Subsequently, on March 21, 2001, SJIT filed a Voluntary Petition for Bankruptcy in the United States Bankruptcy Court in Delaware. (Docket No. 33). That same day, an Amended Complaint was filed against Commercial Union Insurance Company, Reliance Insurance Company, Royal Insurance Company of America ("Royal"), New York Marine and General Insurance Company, and American Home Assurance Company. (Docket Nos. 33, and 34, respectively). A Second Amended Complaint was filed on April 1, 2003 adding Lexington Insurance Company as a defendant. (Docket No. 58). Plaintiffs voluntarily dismissed the Amended Complaints against each of these insurers except for Royal, SJIT's insurer. (Docket Nos. 37, 41, 56, 65, and 69).

In this Second Amended Complaint, Plaintiffs allege that, on October 10, 1998, longshoreman Torres, a 44 year old man, suffered personal injuries at the Port of San Juan while performing his duties as a truck driver for Sea Land. (Docket No. 58, ¶ 11). On said date, his duty was to transport containers to the pier so that they would be loaded onto the vessel, the M/V EXPEDITION, a vessel that is also owned by Sea Land, via the cranes installed in the loading platform. Once the container was placed behind the crane, a checker would be placed as a mark

to direct the crane operator as to where the cargo would be.  The cargo would then be released from the chassis which, in turn, is connected to the truck transporting the cargo.  Once the crane would hit its mark, the crane operator would pick up the released cargo and proceed to loading it onto the vessel.  He would, thus, lift the container and move it inside the ship for its proper stowage.

On October 10, 1998, the land-based crane, which, although owned by Sea Land, was, and had been for some time, leased and maintained by SJIT, SJ Int'l T, HHWS, and Holt, and was operated by an employee of SJIT, proceeded to grab the container while it was still attached to the truck in which longshoreman Torres was sitting.  The container and the truck, with Torres still inside, were then lifted approximately twenty (20) feet into the air until the truck finally separated from the container causing the truck to hit the pavement.

In their Complaint, Plaintiffs invoke jurisdiction by virtue of 28 U.S.C. § 1331 (federal question), § 1332 (diversity of citizenship - amount in controversy), § 1331(1) (admiralty and maritime), and §1337 (commerce and antitrust regulations - amount in controversy); the Admiralty Extension Act of 1948, 46 U.S.C. § 740; and Article III, § 2 of the Constitution of the United States.  Plaintiffs also claim supplemental jurisdiction based on 28 U.S.C. § 1367.

On September 24, 2004, Royal filed a Motion to Dismiss and Memorandum of Law in support thereof, pursuant to FED.R.CIV.P. 12(b)(6), claiming: 1) lack of admiralty or maritime jurisdiction under 28 U.S.C. § 1331(1), 46 U.S.C. § 740 or Article III § 2 of the Constitution of the United States; 2) lack of factual allegations of intentional infliction of emotional distress; and that 3) Plaintiffs' claims are time-barred. (Docket No. 128).  Subsequently, on November 8, 2004, Plaintiffs filed their Opposition arguing that admiralty and diversity jurisdictions were present;

that there, is, in fact, an allegation of intentional infliction of emotional distress; and that the claims are not time-barred. (Docket No. 144).  Royal filed their reply on November 19, 2004.

## IV

## ADMIRALTY JURISDICTION

In the case at bar, Royal seeks the dismissal of Plaintiffs' claim under the Admiralty Extension Act of 1948, <u>supra</u>, and Article III, Sec. 2 of the United States Constitution for failure to state a claim under both statutory and constitutional provisions.  Given that these provisions are only of a jurisdictional nature, Royal argues that the claims should, thus, be dismissed.  Royal avers that admiralty jurisdiction is lacking since the injury was neither caused by either the vessel M/V EXPEDITION or one of its appurtenances, nor was plaintiff performing an activity traditionally considered as maritime, nor does it impact on maritime commerce.

According to section 1333 of Title 28 of the United States Code, "[t]he district courts shall have original jurisdiction, exclusive of the States, of: (1) [a]ny civil case of admiralty or maritime jurisdiction, saving to suitors in all cases all other remedies to which they are otherwise entitled[.]"  Moreover, the Admiralty Extension Act of 1948, in its § 740, provides that "[t]he admiralty and maritime jurisdiction of the United States shall extend to and include all cases of damages or injury, to person or property, caused by a vessel on navigable water, notwithstanding that such damage or injury be done or consummated on land[.]"

Originally, the federal courts' maritime tort jurisdiction was determined solely by where the accident took place.  Consequently, injuries which occurred within the navigable waters of the United States would invariably fall within the federal courts' jurisdiction.  *See* Victory Carriers, Inc. v. Law, 404 U.S. 202, 205, 92 S.Ct. 418, 421 (1972).  Notwithstanding, the Supreme Court

later recognized that a nexus requirement was also necessary in order to determine whether maritime jurisdiction did, in fact, exist.  Thus, it held that a showing must be made that the wrong caused bears a significant relationship to traditional maritime activity (connection/nexus requirement) in addition to the location requirement.  *See* <u>Foremost Ins. Co. v. Richardson</u>, 457 U.S. 668, 102 S.Ct. 2654 (1982); <u>Executive Jet Aviation, Inc. v. City of Cleveland, Ohio</u>, 409 U.S. 249, 93 S.Ct. 493 (1972);  <u>Tokyo Marine and Fire Ins. Co., Ltd. v. Perez & Cia de Puerto Rico, Inc.</u>, 893 F. Supp. 132, 134 (D.P.R. 1994).  Moreover, the Supreme Court established that in order to comply with the connection/nexus requirement, the wrong must have a disruptive impact on maritime commerce, even if only potentially.  *See* <u>Sisson v. Ruby</u>, 497 U.S. 358, 110 S.Ct. 2892 (1990).

> That is to say:

>> [a] party seeking to invoke federal admiralty jurisdiction pursuant to 28 U.S.C. § 1331(1) over a tort claim must satisfy conditions both of location and of connection with maritime activity.  A court applying the location test must determine whether the tort occurred on navigable water or whether the injury suffered on land was caused by a vessel on navigable water. [ ] The connection test raises two issues.  A court, first, must "assess the general features of the type of incident involved," [ ] to determine whether the incident has "a potentially disruptive impact on maritime commerce[.]" Second, a court must determine whether "the general character" of the "activity giving rise to the incident" shows a "substantial relationship to traditional maritime activity."

<u>Jerome B. Grubart, Inc. V. Great Lakes Dredge & Dock Company</u>, 513 U.S. 668, 115 S.Ct. 1043 (1995) (*citations omitted*).  Thus, maritime jurisdiction in tort actions can only exist where both, the location and connection/nexus aspects of the test are met.  It must be emphasized that <u>one by itself will never suffice</u>.  *See* <u>Florio v. Olson</u>, 129 F.3d 678, 680 (1ˢᵗ Cir. 1997).

The Admiralty Extension Act of 1948, <u>supra</u>, extends maritime jurisdiction to all cases of

damages or injury, to person or property, caused by a vessel on navigable water, notwithstanding that such damage or injury be done or consummated on land.  That is to say, a vessel's appurtenances have also been deemed part of the vessel itself when applying the location test to an alleged maritime tort.  So, if the claimant is injured by equipment that was part of the vessel's usual gear, or was stored on board, or is in some way attached to the vessel, the maritime location prong of the test would conclusively be met.  Even so, in *Victory Carriers* the Supreme Court found that piers and docks have consistently been considered extensions of land and the injuries inflicted to them or incurred in on them are not compensable under maritime law unless said injury was caused by a vessel on navigable waters.  Victory Carriers, 404 U.S. at 206-07.  Accordingly, the Supreme Court held in *Victory Carriers* that it would not extend the reach of federal law to pier-side accidents caused by pier-based equipment when said equipment was not part of the vessel's usual gear.  Id., 404 U.S. at 204.  It may be concluded, then, that, while the Admiralty Extension Act did extend the federal courts' jurisdiction in admiralty, it did not change the rule that a dock or pier is an extension of land where jurisdiction in admiralty is inapposite.  Finally, the Admiralty Extension Act, supra, does not apply to certain borderline situations like this one.  When the victim is injured on land or on a pier or dock, and his injury was not caused by the vessel, its master, or any of its crew, jurisdiction in admiralty cannot be sustained.  *See* 1 THOMAS J. SCHOENBAUM, ADMIRALTY AND MARITIME LAW §3-4 (4th ed. 2004).[1]

---

[1]  The case cited by Plaintiff, Tucker v. Calmar Steapship Corp., 437 F.2d 440, 442 at n.1(1st Cir. 1972) clarified the outer limits of a § 740 claim under the Admiralty Extension Act of 1948, 42 U.S.C. § 740 as follows: "*Victory Carriers* held that a longshoreman, working on the pier, when injured by *shore-based* equipment could look only to state law for recompense.  *Gutierrez*'s use of section 740 was again specifically approved, but the two cases were distinguished.  In *Gutierrez*, the injury was traceable to defects in appurtenances of the *ship* and its unfitness for unloading, while in *Victory Carriers* the defect was in shore-based machinery.  As will appear *infra*, the proximate cause of Tucker's injuries was the unreasonable use of the ship's gear in loading operations, bringing the case within the rule of *Gutierrez* and the purview of section 740."

In essence, Royal claims that maritime jurisdiction is lacking because the location test is not met, and, as studied above, if one of the prongs of the test is not complied with, then maritime jurisdiction cannot exist. Royal bases its claim namely on Torres's admission in the Second Amended Complaint that his "job on that particular day was to carry containers to the ship's area inside the port to allow in order for the ship to be loaded through the cranes installed in the loading platform" (Docket No. 1, ¶¶ 19 and 25; and Docket No. 58, ¶¶ 12 and 18), that the M/V EXPEDITION was owned by Sea-Land who is not a party to this complaint (Docket No. 1, ¶ 23, and 58, ¶ 16), and that the crane that caused the injury was under the complete control of, leased by, and maintained exclusively by SJIT, SJ Int'l T, HHWS and Holt (Docket No. 1, ¶¶ and 34, and 58, ¶ 19). Royal contends that, given the aforementioned admitted facts, the injury occurred on land and not on navigable waters. Also, the injuries were not caused by the M/V EXPEDITION or any of its appurtenances or its crew. Royal asserts that the injuries Torres suffered were caused by a crane which was indisputably land based, and was leased, operated, and maintained by SJT, SJ In't. T, HHWS and Holt rather than by any vessel, vessel master, or vessel crew. That being so, Royal maintains that there is a complete lack of federal maritime jurisdiction given that the location prong of the two part test was not complied with due to the fact that the crane was not, and is not, an appurtenance of the vessel or part of its gear.

Plaintiffs, on the other hand, argue that the injuries suffered by Torres were, in fact, caused by the M/V EXPEDITION, its crew, and the pier-based crane. He contends that, even though the crane operator was employed by SJIT, not only was he performing duties for the owner of the vessel – Sea-Land – at the time of the accident, but he was a member of the vessel's crew. Also, he insists that the crane was part of the vessel's usual gear.

After a careful review of the allegations, Plaintiffs' Second Amended Complaint does not support their argument that the Extension of Admiralty Jurisdiction Act provides sufficient grounds for jurisdiction in this case.  It is undisputed that the tort subject of this claim **did not** occur on navigable waters, but on a pier.  Furthermore, the jurisdiction provided by the Extension of Admiralty Act is also lacking, for injuries suffered by Torres were caused by a land based crane while he was working on the pier.  It is evident to this Court that said crane was neither an appurtenance of the M/V EXPEDITION, nor was it mounted or physically connected in any way to the vessel.  *See* Tucker v Calmar Steamship Corp., 457 F.2d at 442, n.1, supra.  What is more, Plaintiff Torres himself admitted to the crane never having been under the control of the M/V EXPEDITION or its personnel.  (Docket No. 1, ¶¶ 33 and 34; No. 58, ¶ 19; and No. 144, pp. 14-15).  He himself elucidates that the crane was leased, operated and maintained exclusively by SJIT, SJ Int'l T, and HHWS and Holt – a clear manifestation that the crane was not under the control of the vessel or any of its crew members. Moreover, Plaintiffs' averment that the crane operator was performing duties for the owner of the vessel (Sea Land) and was a member of its crew does not convince the Court at this stage in the proceedings when Plaintiffs, themselves, consistently purport that the crane operator was an employee of SJIT, the crane was, since before October 10, 1998, leased, maintained, and operated by SJIT, SJInt'l. T, HHWS, and Holt.  It seems evident to this Court, then, that the crane was simply land-based equipment that happened to be contracted to do some work on the dock that day.  Consequently, all Plaintiff's claims under admiralty law are hereby **DISMISSED**.

Defendant also bids all allegations that reference the maritime doctrine of unseaworthiness be stricken pursuant to Fed.R.Civ. 12(f) since said doctrine only applies to a vessel or vessel

owner, neither of which are parties to the present action.  Consequently, Royal, as SJIT's insurer, cannot be liable to Plaintiffs' under the doctrine of unseaworthiness given the fact that SJIT operated a shore based crane and was not the owner of the vessel.  Moreover, Royal claims that, since the doctrine is purely based on strict liability, its inclusion in the Complaint, Amended Complaint, and Second Amended Complaint is overly prejudicial.  Plaintiffs oppose Royal quite narrowly by simply stating that "[u]nseaworthiness is a legal term repeatedly discuss[ sic] in the application of federal maritime law to alleged torts, whether negligence or unseaworthiness is claimed.  Its inclusion in the Second Amended Complaint is not prejudicial to defendant in any way despite the fact that unseaworhtiness is a form of strict liability."  *Memorandum in Opposition to Defendant's Royal Insurance Partial Summary Judgment and Motion to Dismiss*, Docket No.144, p.18.

It is undisputed that maritime law imposes only upon a vessel owner the absolute duty of seaworthiness – that is, to provide a seaworthy vessel and appurtenances reasonably fit for their intended use –  to every member of his crew.  It has been a long standing tradition and the law is very clear on this matter.  *See* Gutierrez v. Waterman S.S. Corp., 373 U.S. 2006, 83 S.Ct. 1185 (1963); Morales v. City of Galveston, Texas, 370 U.S. 165, 82 S.Ct. 1226 (1962); Mitchell v. Trawler Racer, Inc., 362 U.S. 539, 80 S.Ct. 926 (1960); Carr v. PMS Fishing Corp., 191 F.3d 1 (1st Cir. 1999); Ferrara v. A&V Fishing, Inc., 99 F.3d 449 (1st Cir. 1996); Del Valle v. Marine Transp. Lines, Inc., 582 F.Supp. 573 (D.P.R. 1984).  Therefore, in order to claim a remedy under the unseaworthiness doctrine, the claimant must simply show that "some condition or appurtenance on board the vessel at the time of the accident was unreasonably hazardous, even if the stevedore-employer was the sole cause of the hazard."  Morehead v. Atkinson-Kiewit, J/V,

97 F.3d 603, 608 (1st Cir. 1996).

As the Court has concluded that admiralty jurisdiction in this case is lacking due to the fact that the location requirement is not met, the claim for unseaworthiness is also inapposite (an accident neither at sea nor on the dock related to an appurtenance of the ship).  In addition, neither the M/V EXPEDITION nor her owner are parties to this action making said claim implausible as a matter of law.  Therefore, all claims based on unseawothiness or lack of care and all references to such are hereby ordered **STRICKEN** from Plaintiffs' pleadings.

## V

## INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

In its motion to dismiss, Royal asserts that the complaint should be dismissed because Plaintiffs failed to state a claim for intentional infliction of emotional distress for which relief should be granted.  Royal avers that even if the Court were to accept that stated in the Second Amended Complaint as true, Plaintiffs' allegations do not rise to the level of outrageousness necessary to state a claim for intentional infliction of emotional distress.  Royal bases its allegation on its understanding that in order to state a claim for intentional infliction of emotional distress, the claimant party must plead, at the complaint stage, facts from which any such intentional conduct may be established.  Royal entertains the idea that Plaintiffs must establish in his complaint that the conduct of the defendant was extreme and outrageous, that severe emotional distress was suffered, and that the defendant desired to inflict said distress or, at a minimum, knew that such distress would be substantially certain to result form the conduct.  Plaintiffs' opposition remains silent regarding these contentions.

The Court agrees with the Magistrate's conclusion that, even though the Court has yet to

ascertain whether Plaintiffs will be able to prove an extreme and outrageous conduct on Defendant's part, taking the Second Amended Complaint liberally, and drawing all reasonable inferences in Plaintiffs' favor, they are enough to state a claim for relief under Fed.R.Civ.P. 8(a)(2).  Certainly, these allegations are scanty at best, however, they are sufficient to adequately notify Defendants of what Plaintiffs' claim is and the ground upon which it rests for only "a short and plain statement of the claim showing that the pleader is entitled to relief" is necessary. Fed.R.Civ.P. 8(a)(2).  Swierkiewicz v. Sorema N.A., 534 U.S. at 514-15, 122 S.Ct. at 999.  "State of mind, including motive and intent, may be averred generally."  Educadores Puertorriquenos en Accion v. Hernandez, 367 F.3d at 66.  At this stage of the proceedings, Plaintiffs' allegations are sufficient to survive a Rule 12(b)(6) motion.[2]  Consequently, Royal's motion to dismiss is **DENIED** as to failure to state a claim upon which relief can be granted.

## VI

### STATUTE OF LIMITATIONS

Royal suggests that any direct action against it is untimely and must be dismissed.  Royal argues that Torres sustained personal injuries on October 10, 1998 and Royal was not served until January 2, 2003 – more than four years after the incident.  Also, Royal sustains that an action against an insured does not toll a direct action against an insurer, thus commencement of action against SJIT did not toll the running of the one year statute of limitations against Royal.  Plaintiffs argue that by having filed against SJIT – Royal's insured – within the one year statute of limitation under local law, they tolled the prescriptive period against Royal.  Moreover, they claim

---

[2] This allegation may be addressed later at summary judgment stage.  The result may be totally different because evidence must be produced by plaintiff warranting a potential different result.

that the doctrine of solidarity allows a plaintiff to amend a complaint to include a joint tort feasor not originally included in the complaint – as it occurred in the case at bar due to SJIT's continued denial when asked to discover whether an insurance policy existed.

Under Puerto Rico law, actions for damages arising from negligent acts must necessarily be commenced within the one year statute of limitations.  31 P.R. LAWS ANN. § 5298(2).  Furthermore, the Puerto Rico Supreme Court has specified that the one year period starts to run upon the discovery by the injured party of the injury and of its author rather than at the time of the injury.  *See* Espada v. Lugo, 312 F.3d 1 (1ˢᵗ Cir. 2002).  Finally, in Tokyo Marine and Fire Ins. Co. Ltd. v. Perez & Cia. de Puerto Rico, Inc., 142 F.3d 1 (1ˢᵗ Cir. 1998), the First Circuit established, interpreting Puerto Rico law, that insured defendants in tort actions are solidarily liable with its insurer.  As a result, when the prescriptive period is interrupted as to the insurer, so it is tolled as to the insured.  *See also* 31 P.R. LAWS ANN. §§ 5303, and 5304.

It is unquestionable that Plaintiffs filed the original complaint on October 6, 1999 well within the statutory period granted by law.  Having the original complaint been filed in a timely fashion against SJIT – Royal's insured – there is no doubt that the statute of limitations for all tortfeasors jointly liable, as is Royal, was stalled for the interruption against one tortfeasor benefits all others.  *See* Tokyo Marine, 142 F.3d at 7.  Furthermore, once Plaintiffs knew of the existence of SJIT's insurance companies, they added them to the suit by amending the complaint, and, since the solidarity doctrine allows for the timely inclusion of a solidary torfeasor as long as the original claim is considered to be timely, the action against Royal was not time barred.  Thus, Royal's motion to dismiss is **DENIED** as to the claim being time barred.

## VII

Page 15 of  16

For the reasons stated above, the Court hereby **ADOPTS IN PART**[3] the Magistrate Judge's RR, **GRANTS** Royal's motion to dismiss for lack of admiralty jurisdiction, **ORDERS** all references to the doctrine of unseaworthiness be **STRIKEN** from the record, and **DENIES** Royal's motion to dismiss on all other grounds.  (Docket No. 128).

**IT IS SO ORDERED.**

**Date: April 28, 2005**

                                                     s/ Daniel R. Dominguez
                                                     **DANIEL R. DOMINGUEZ**
                                                      **U.S. DISTRICT JUDGE**

---

[3]  The Court finds that the Magistrate Judge's recommendation to deny Royal's Motion to Dismiss "in its entirety" inappropriate at this time given that Royal's request to dismiss all admiralty jurisdiction claims as well as references to the useaworthiness doctrine is meritorious.