# UNITED STATES DISTRICT COURT
## DISTRICT OF PUERTO RICO

**NELSON TORRES VAZQUEZ,**
**MARIA FRANCISCA ADORNO SEIN,**
**NILSA IVELISSE TORRES ADORNO,**
**AND IRIS YOLANDA TORRES ADORNO**
Plaintiffs,

vs.　　　　　　　　　　　　　　　　　　　CIVIL NO.: 99-2131 (DRD)

**COMMERCIAL UNION INSURANCE CO.,**
**RELIANCE INSURANCE COMPANY, ROYAL**
**INSURANCE COMPANY OF AMERICA,**
**LEXINGTON INSURANCE COMPANY, NEW**
**YORK MARINE & GENERAL INSURANCE**
**COMPANY, AND AMERICAN HOME**
**ASSURANCE CO.**
Defendants

## OPINION AND ORDER

Pending before the Court is Royal Insurance Company of America's *Motion for Summary Judgment on the Grounds of Lack of Subject Matter Jurisdiction*. (Docket No. 170). Through said motion, Royal insists that this Court lacks subject matter jurisdiction over the instant claim provided that plaintiffs have failed to properly support their allegations of diversity and/or federal question. In sum, Royal avers that, pursuant to 28 U.S.C. §1332(c)(1), the insurance company must assume it's insured citizenship for diversity purposes and that the insured's citizenship is that of Puerto Rico. Thus, examining that the insured's citizenship is Puerto Rico, as well as plaintiff's, there is no diversity jurisdiction in the instant claim. Finally, defendants further allege that the only claims which remain alive are exclusively state law negligence claims provided that this Court, in a previous *Opinion and Order* decided that there was no maritime jurisdiction.

Plaintiffs duly opposed said request. (Docket Nos. 175, and 177). Through their scant

opposition, the Court can only conclude that plaintiffs are arguing that San Juan International Terminal, Inc. ("SJIT") – Royal's insured – is a subsidiary of The Hold Group, Inc. which, in turn, holds citizenship outside of Puerto Rico.  Accordingly, once again, the Court can deduct that, plaintiffs are requesting that the case not be summarily denied due to there being diversity of citizenship between the subsidiary's parent company and plaintiffs.  The burden to prove jurisdiction lies on plaintiffs.  *See* Murphy v. United States, 45 F.3d 520, 522  (1st Cir. 1995).

Before entering into the parties' allegations and requests, the Court must briefly clarify that the instant case was filed before the Court in October 6, 1999.  (Docket No. 1).  Subsequently, due to intricate bankruptcy proceedings,[1] filings of consecutive amended complaints, and the adding of multiple new parties, who of course had to be duly summoned, this case has remained without a prompt resolution in this Court's docket.  Because of said complexities, discovery could not begin until 2003.  Furthermore, even as recently as March of 2004, the parties were still having great difficulties in deposing non-party member witnesses due to said witnesses lack of cooperation, if not outright disdain of court orders.  Moreover, by said date, plaintiffs had even yet to file an answer to any of defendants' interrogatories, thus, further delaying the proceedings of this case.  Consequently, discovery cut-off date had to be moved back even further to June of 2004.  Accordingly, the Court was not in proper position to address the late filed dispositve requests until now.  Therefore, the Court now proceeds to tend to the parties' final dispositive requests.

For the reasons stated below, the Court **GRANTS** Royal Insurance's motion for summary judgment and **DISMISSES WITH PREJUDICE** all of plaintiffs federal claims and **WITHOUT**

---

[1]  Plaintiffs requested relief from the automatic stay before the United States Bankruptcy Court for the District of Delaware in order to proceed with this case which was subsequently granted.

**PREJUDICE** all state law claims.

## I. FACTUAL AND PROCEDURAL BACKGROUND

The factual and procedural background is described as it appears in the Court's previous *Opinion and Order* found at Docket No. 150, and in Torres Vazquez v. Commercial Union Ins. Co., 367 F.Supp.2d 231, 234-35 (D.P.R. 2005).

On October 6, 1999, Plaintiffs filed a Complaint against San Juan International Terminal, Inc. ("SJIT"), San Juan International Transport Inc. ("SJ Int'l T"), Holt Hauling and Warehousing Systems, Inc. ("HHWS") and the Holt Group, Inc. ("Holt") seeking compensation for damages that Plaintiff Nelson Torres Vazquez ("Torres") allegedly suffered on October 10, 1998 while employed as a driver for Sea Land Services, Inc. ("Sea Land"). Subsequently, on March 21, 2001, SJIT filed a Voluntary Petition for Bankruptcy in the United States Bankruptcy Court in Delaware. (Docket No. 33). That same day, an Amended Complaint was filed against Commercial Union Insurance Company, Reliance Insurance Company, Royal Insurance Company of America ("Royal"), New York Marine and General Insurance Company, and American Home Assurance Company. (Docket Nos. 33, and 34, respectively). A Second Amended Complaint was filed on April 1, 2003 adding Lexington Insurance Company as a defendant. (Docket No. 58). Plaintiffs later voluntarily dismissed the Amended Complaints against each of these insurers except for Royal, SJIT's insurer. (Docket Nos. 37, 41, 56, 65, and 69).

In this Second Amended Complaint, Plaintiffs allege that, on October 10, 1998, longshoreman Torres, a 44 year old man, suffered personal injuries at the Port of San Juan while performing his duties as a truck driver for Sea Land. (Docket No. 58, ¶ 11). On said date, his duty was to transport containers to the pier subsequently to be loaded onto the vessel, the M/V

EXPEDITION, a vessel that is also owned by Sea Land, via the cranes installed in the loading platform.  Once the container was placed behind the crane, a checker would be placed as a mark to direct the crane operator as to where the cargo would be.  The cargo would then be released from the chassis which, in turn, is connected to the truck transporting the cargo.  Once the crane would hit its mark, the crane operator would pick up the released cargo and proceed to loading it onto the vessel. He would, thus, lift the container and move it inside the ship for its proper stowage.

On October 10, 1998, the land-based crane, which, although owned by Sea Land, was, and had been for some time, leased and maintained by SJIT, SJ Int'l T, HHWS, and Holt, and was operated by an employee of SJIT, proceeded to grab the container while it was still attached to the truck in which longshoreman Torres was sitting.  The container and the truck, with Torres still inside, were then lifted approximately twenty (20) feet into the air until the truck finally separated from the container causing the truck to fall and hit the pavement.

In their Complaint, Plaintiffs invoke jurisdiction by virtue of 28 U.S.C. § 1331 (federal question), § 1332 (diversity of citizenship - amount in controversy), § 1331(1) (admiralty and maritime), and §1337 (commerce and antitrust regulations - amount in controversy); the Admiralty Extension Act of 1948, 46 U.S.C. § 740; and Article III, § 2 of the Constitution of the United States. Plaintiffs also claim supplemental jurisdiction based on 28 U.S.C. § 1367.

On September 24, 2004, Royal filed a Motion to Dismiss and Memorandum of Law in support thereof, pursuant to FED.R.CIV.P. 12(b)(6), claiming: 1) lack of admiralty or maritime jurisdiction under 28 U.S.C. § 1331(1), 46 U.S.C. § 740 or Article III § 2 of the Constitution of the United States; 2) lack of factual allegations of intentional infliction of emotional distress; and that 3) Plaintiffs' claims are time-barred. (Docket No. 128).  Subsequently, on November 8, 2004,

Plaintiffs filed their Opposition arguing that admiralty and diversity jurisdictions were present; that there are, in fact, an allegation of intentional infliction of emotional distress; and that the claims are not time-barred. (Docket No. 144). Royal filed their reply on November 19, 2004.

After a Report and Recommendation from Magistrate Judge Camille L. Velez Rive was issued, which the Court adopted in part and denied in part under *de novo* review, the Court dismissed all claims founded on Admiralty/Maritime jurisdiction. *See* <u>Torres Vazquez</u>, 367 F.Supp.2d 234-235. Subsequently, a motion for summary judgment, which was also referred for a Report and Recommendation, but of Magistrate Judge Gustavo A. Gelpi, was denied by the Court as premature because of uncertain and contingent events as to a declaratory judgment request under the precedent of <u>Ernst & Young v. Depositors Economic Protection Corp.</u>, 45 F.3d 530, 536 (1st Cir. 1995).

## II.  SUMMARY JUDGMENT STANDARD

The parties have filed the instant motion and its opposition using the framework under Fed.R.Civ.P. 56 which is applicable to a summary judgment. The court in a note briefly expresses the summary judgment standard but finds for the reasons later expressed in this Opinion and Order that the proper standard to challenge federal jurisdiction is Rule 12(b)(1) of Fed.R.Civ.P.[2]

---

[2]  The framework of Fed.R.Civ.P. 56 provides that it is appropriate to enter summary judgment when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c). *See* <u>Celotex Corp v. Catrett</u>, 477 U.S. 317, 324-25, 106 S.Ct. 2548, 2553-54 (1986); <u>Abbadessa v. Moore Business Forms, Inc.</u>, 987 F.2d 18, 22 (1st Cir. 1993). Pursuant to the language of the rule, the moving party bears the two-fold burden of showing that there is "no genuine issue as to any material facts," *and* that the mover is "entitled to judgment as a matter of law." <u>Vega-Rodriguez v. Puerto Rico Tel. Co.</u>, 110 F.3d 174, 178 (1st Cir. 1997). When the moving party asserts that the competent evidence clearly demonstrates that it is entitled to judgment and after the moving party has satisfied this burden, the onus shifts to the resisting party to show that there still exists "a trial worthy issue as to some material fact." <u>Cortes-Irizarry v. Corporacion Insular</u>, 111 F.3d 184, 187 (1st Cir. 1997).

To determine whether these criteria have been met, a court must pierce the boilerplate of the pleadings and carefully review the parties' submissions to ascertain whether they reveal a trial

# III.  DIVERSITY OF CITIZENSHIP

Federal courts are courts of limited jurisdiction. This Court, thus, has the responsibility "to police the border of federal jurisdiction".  <u>Spielman v. Genzyme Corp</u>, 251 F3d 1 (1st Cir. 2001).

worthy issue as to any material fact.  *See* <u>Perez v. Volvo Car Corporation</u>, 247 F.3d 303, 310 (1st Cir. 2001); <u>Grant's Dairy-Me., LLC v. Comm'r of Me. Dep't of Agric., Food & Rural Res.</u>, 232 F.3d 8, 14 (1st Cir. 2000); <u>Cortes-Irizarry v. Corporacion Insular</u>, 111 F.3d 184, at187; <u>McIntosh v. Antonino</u>, 71 F.3d 29, 33 (1st Cir. 1995) (the Court must look behind the facade of the pleadings alleged in the complaint, in this case the *Third Amended Complaint* (Docket No. 59) and examine the parties proof in order to determine whether a trial is required.).  Furthermore, a fact is "material" if it  potentially could affect the suit's outcome.  *See* <u>Id</u>.  An issue concerning such a fact is "genuine" if a reasonable fact finder, examining the evidence and drawing all reasonable inferences helpful to the party resisting summary judgment, could resolve the dispute in that party's favor.  *See* <u>Id</u>.  The Court must review the record "taken as a whole," and "may not make credibility determinations or weigh the evidence."  <u>Reeves v. Sanderson Plumbing Products, Inc.</u>, 530 U.S. 133, 120 S.Ct. 2097, 2110 (2000).

This is so, because credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge.  *See* <u>Reeves</u>, <u>id.</u> Furthermore, there is "no room for credibility determinations, no room for the measured weighing of conflicting evidence such as the trial process entails, [and] no room for the judge to superimpose his own ideas of probability and likelihood[.]" <u>Greenburg v. Puerto Rico Mar. Shipping Auth.</u>, 835 F.2d 932, 936 (1st Cir. 1987).  "The Court should give credence to the evidence favoring the non-movant as well as the evidence supporting the moving party that is contradicted and unimpeached, at least to the extent that evidence comes from disinterested witnesses."  <u>Id</u>.  Issues of motive are usually not appropriate when in summary judgment for these are questions better suited to be resolved by the trier of facts.  *See* <u>Pullman-Standard v. Swint</u>, 456 U.S. 273, 288-90, 102 S.Ct. 1781, 1790-91 (1982); <u>Lipsett v. University of P.R.</u>, 864 F.2d 881, 895 (1st Cir. 1988); <u>Dominguez-Cruz v. Suttle Caribe, Inc.</u>, 202 F.3d 424, 433 (1st Cir. 2000); *see also* <u>Ayala Gerena v. Bristol Myers-Squibb Co.</u>, 95 F.3d 86, 95 (1st Cir. 1996); <u>Mulero Rodriguez v. Ponte Inc.</u>, 98 F.3d 670, 677 (1st Cir. 1996); <u>Stoutt v. Banco Popular de P.R.</u>, 158 F.Supp.2d 167, 172 (D.P.R. 2001).

An absence of evidence on a critical issue weighs against the party – be it the movant or the non-movant – who would bear the burden of proof on that issue at trial.  *See* <u>Perez v. Volvo Corporation</u>, 247 F. 3d at 310; *see also* <u>Torres Vargas v. Santiago Cummings</u>, 149 F.3d 29, 35-36 (1st Cir. 1998); <u>Garside v. Osco Drug, Inc.</u>, 895 F.2d 46, 48 (1st Cir. 1990).  Accordingly, "speculation and surmise, even when coupled with effervescent optimism that something definite will materialize further down the line, are impuissant on the face of a properly documented summary judgment motion."  <u>Ayala-Gerena v. Bristol Myers-Squibb Co.</u>, 95 F.3d at 95.

At the summary judgment stage, the trial court examines the entire record "in the light most flattering to the non-movant and indulges all reasonable inferences in that party's favor.  Only if the record, viewed in the manner and without regard to credibility determinations, reveals no genuine issue as to any material fact may the court enter summary judgment."  <u>Cadle Company v. Hayes</u>, 116 F.3d 957 at 959-60 (1st Cir. 1997).  In other words, the court must construe the record and all reasonable inferences from it in favor of the non-movant (the party opposing the summary judgment motion). *See* <u>Suarez v. Pueblo Int'l, Inc</u>. 229 F.3d 49, 53 (1st Cir. 2000); <u>Cortes-Irizarry</u>, 111 F. 3d at 187; *see also* <u>United States v. Diebold, Inc.</u>, 369 U.S. 654, 655 (1962).

This is so for all federal courts must "rigorously enforce the jurisdictional limits that Congress chooses to set in diversity cases." Del Rosario Ortega v. Star Kist Foods, 213 F.Supp. 2d 84, 88 (D.P.R. 2002) (citing Conventry Sewage Association v. Dworking Realty Co., 71 F.3d 1, 3 (1st Cir. 1995)). Moreover, just as a federal court cannot expand its jurisdictional horizon, the parties cannot confer subject matter jurisdiction on a federal court "by indolence, oversight, acquiescence, or consent." U.S. v. Horn, 29 F.3d 754, 768 (1st Cir. 1994). Therefore, as stated before, a party that seeks the jurisdiction of the federal courts has the inalienable burden of demonstrating its existence. See Murphy v. United States, 45 F.3d at 522.

As courts of limited jurisdiction, federal courts have the duty of strictly construing jurisdiction-granting statutes. See e.g. Alicea-Rivera v. SIMED, 12 F. Supp. 2d 243, 245 (D.P.R. 1998). In the instant case, although plaintiffs cite a plethora of jurisdiction conferring statutes, amongst them it is the court's opinion that diversity of jurisdiction is the only plead jurisdiction justified under the facts set forth in the complaint under 28 U.S.C. § 1332. As is known, diversity jurisdiction requires complete diversity between all plaintiffs and all defendants. See Casas Office Machines v. Mita Copystar America, Inc., 42 F.3d 668, 673 (1st Cir. 1994); Strawbridge v. Curtiss, 7 U.S. (3 Cranch) 267, 2L.Ed. 435 (1806). Since Co-Defendants have challenged plaintiffs' jurisdictional allegations, plaintiffs bear the burden of proving, by a preponderance of the evidence, the facts supporting jurisdiction. See Thomson v. Gaskil, 315 U.S. 442 (1942); Bank One v. Montle, 964 F 2d 48, 50 (1st Cir. 1992); Rivera v. Hosp. Interamericano de Medicina Avanzada, 125 F. Supp. 2d 11, 17 (D.P.R. 2000).[3]

---

[3] The Court has discretion as to the manner in which preliminary questions of jurisdiction are to be resolved and enjoys broad authority "to order discovery, consider extrinsic evidence, hold evidentiary hearings and make findings of fact in order to determine its own jurisdiction". Valentín, 254 F 3d at 363.

For federal jurisdictional purposes, diversity of citizenship must be established as of the time of the filing of the suit.  *See* Freeport-McMoran, Inc. v. K.N. Energy, Inc., 498 U.S. 426, 111 S.Ct. 858 (1991); Valentín v. Hospital Bella Vista, 254 F.3d at 361;  Rivera, 125 F.Supp.2d at 16.  When elucidating diversity jurisdiction, moreover, a person's (be it a natural or a juridical person) domicile is equivalent to his State's citizenship.  *See* Williamson v. Osenton, 232 U.S. 619, 625 (1994); Valentín, 254 F.3d at 366.  That is to say, a person is considered to be a citizen of the state in which he is domiciled.  *See* Lundquist v. Precision Valley Aviation, Inc., 946 F.2d 8, 10 (1st Cir. 1991). Domicile, in turn, generally requires two elements: (1) physical presence in a state, and (2) the intent to remain there indefinitely.  Valentín, 254 F.3d at 366.  A person's domicile, furthermore, is "the place where he has a true, fixed home and principal establishment, and to which, whenever he is absent he has the intention of returning."  Rodríguez-Díaz v. Sierra-Martínez, 853 F.2d 1027, 1029 (1st Cir. 1988) *(internal citations omitted)*.  It is equally settled that a party may only have one domicile at a time.  *See* Valentín, 254 F.3d at 367.  However, a change of one's legal domicile could, very well, occur instantly.  *See* Morris v. Gilmer, 129 U.S. 315 (1889).  All that is required is:

> First, residence in a new domicile; and second, the intention to remain there. There must be an intention to remain at the new residence indefinitely; it is not required that the intention be to stay there permanently.  A 'floating intention' to return to a former domicile does not prevent the acquisition of a new domicile.
>
> To acquire a domicile of choice in a place, a person must intend to make that place his home for the time at least.  There is no minimum period of residency required. . . It has long been the rule that motive for the change in residence is irrelevant in determining domicile.

Hawes v. Club Equestre El Comandante, 598 F2.d 698, 701 *(internal citations omitted)*.

In determining the Plaintiffs' domicile, the Court must focus on that party's intent and must consider the totality of the evidence.  The place of residence is *prima facie* evidence of a parties'

domicile.  *See* <u>Macone v. Nelson</u>, 274 F. Supp. 2d 136, 140 (D.P.R. 2003).  The Court, however, must also consider all factors which are relevant to a domicile determination.  Amongst these factors, the following are the most common: (1) the place where civil and political rights are exercised; (2) where taxes are paid; (3) where the person has his real and personal property located; (4) drivers and other licenses obtained; (5) where bank accounts are maintained; (6) the location of club and church membership; and (7) places of business and employment.  *See*  <u>Lundquist</u>, 946 F 2d at 10. As is pellucid, no one single factor is wholly determinative of domicile.  *See* <u>Rivera</u>, 125 F.Supp.2d at 18.  It must be noted that the First Circuit considers registration to vote a "weighty" factor in ascertaining domicile.  <u>Id</u>.

In particular, when faced with a determination of diversity jurisdiction wherein a corporation is involved, as is the case at bar, it has been more than established that a corporation's citizenship derives from the State wherein it is incorporated and the State wherein its principal place of business occurs.[4]  A corporation, however, will not be deemed a citizen of every State in which it conducts business or is otherwise amenable to personal jurisdiction.  *See* <u>Wachovia Bank, National Association v. Schmidt</u>, No. 04-1186, 2006 U.S. LEXIS 766, at **30; 126 S.Ct. 941 (2006). Moreover, the First Circuit Court of Appeals has been eloquent in construing three alternate tests to determine wherein lies a corporation's principal place of business.  In its own words:

> [o]ne is the "nerve center" test which searches for the location from where the activities of the corporation are controlled and directed.  The two other tests are the "center of corporate activity" test, i.e., where the corporation's day-to-day management takes place; and the "locus of operations of the corporation" test, i.e., where the bulk of the corporation's actual physical operations are located.

---

[4]  A corporation's principal place of business has been defined by the First Circuit Court of Appeals as the locus "where all of the corporation's physical assets are located."  <u>Diaz-Rodriguez v. Pep Boys Corp.</u>, 410 F.3d 56, 59 (1st Cir. 2005).

Diaz-Rodriguez, 410 F.3d at 59 (*citing* Topp v. CompAir, Inc., 814 F.2d 830, 834 (1ˢᵗ Cir. 1987)).[5]
This, in turn, translates into a corporation's citizenship being potentially located in different
geographical locations when juxtaposing the "nerve center" test with the "locus of operations of the
corporation" test.   Because a corporation may only have **one** principal place of business, the
applicability of each test must be performed on a case by case basis.   The Court understands that
there is sufficient First Circuit precedent to aid in the task of determine the corporate jurisdiction in
the case at hand. That is to say, pursuant to the First Circuit the "nerve center test governs in the
context of a corporation with 'complex and farflung activities' or a corporation without physical
operation."   Id., at 60.   By implication, thus, the "nerve center test" would be inapposite to
corporations with physical operations which are neither complex or far-flung.  Id.  In fact, the First
Circuit has gone even further and has expressed that the "nerve center: test applies only to far-flung
corporations and/or corporations without physical operations, and have added that the principal place
of business of a corporation that has the bulk of its physical operations in one state is to be
determined under the "locus of operations" test **even when the corporation's executive offices are
located in another state**.  Id. at 61. (Emphasis added.)

Pertaining to corporations involved in parent-subsidiary relationships, which is plaintiffs'
position when opposing the request for *brevis* disposition, the First Circuit has repeatedly upheld
that, "where there is no evidence that the integrity of the corporate form has been violated, the
separate corporate identities of a parent and a subsidiary should be honored when determining either

---

[5]  The First Circuit has expressly disclaimed dicta in previous decisions which referenced the "center of
corporate activity" test.  Accordingly, they have ordered that "[i]n the future, district courts required to determine a
corporation's principal place of business should not apply the center of corporate activity test.  Instead, they should
use either the nerve center test or the locus of operations test, depending on the characteristics of the corporation."
Id., at 61.

one's principal place of business." <u>Taber Partners I v. Merit Builders, Inc.</u>, 987 F.2d 57, 61 (1st Cir.

1993).[6]  That is to say, the general rule is that those subsidiaries which are incorporated as separate

entities from parent corporations must be considered as having their own principal place of business.

*See* 1 JAMES WM. MOORE ET AL., MOORE'S FEDERAL PRACTICE ¶ 0.77.  Thus, when ascertaining a

corporation's principal place of business, the Court is to focus solely on the business activities of the

corporation whose principal place of business is at issue – i.e. the subsidiary in the case at bar

having the Court accepted as true all well-pleaded factual claims and indulged all reasonable

inferences in plaintiffs favor.  *See* <u>Viqueira v. First Bank</u> 140 F.3d 12, 16 (1st Cir. 1998).

A defendant who challenges the existence of diversity jurisdiction has two alternatives

through which to question diversity. "The first way is to mount a challenge which accepts the

plaintiff's version of the jurisdictionally-significant facts as true and addresses the sufficiency".

<u>Valentín</u>, 254 F.3d at 363.  This type of challenge requires "the court to assess whether the plaintiff

has propounded an adequate basis for subject-matter jurisdiction."  <u>Id</u>. (*citations omitted*).

Notwithstanding, diversity jurisdiction may also be contested "by controverting the accuracy (rather

than the sufficiency)of the jurisdictional facts asserted by the plaintiff and proffering materials of

evidentiary quality in support of that position."  <u>Id</u>.  This type of challenge, unlike a motion for

summary judgment pursuant to Fed.R.Civ.P. 56(c), demands a "differential fact finding".  Therefore,

the Court must address the merits of the jurisdictional claim "by resolving the factual disputes

between the parties" without providing plaintiff s' averments any presumptive weight.  <u>Id</u>.  The

---

[6] *See also* U.S.I. Properties Corp. v. M.D. Constr. Co., Inc., 860 F.2d 1, 7 (1st Cir.), *cert. denied*, 490 U.S. 1065 (1989); Rodriguez v. SK&F, Co., 833 F.2d 8, 9 (1st Cir. 1987); Topp v. CompAir, Inc., 814 F.2d 830, 833-39 (1st Cir. 1987); Luogo Vina v. Pueblo Int'l, Inc., 574 F.2d 41, 43-44 (1st Cir. 1978); Merino de Walker v. Pueblo Int'l, Inc., 569 F.2d 1169, 1170-73 (1st Cir. 1978).

Court understands it is faced with a challenge addressing the sufficiency of the jurisdictional facts as asserted by the Plaintiffs in the complaint.

## IV.  RULE 12(b)(1) STANDARD

"As a general matter, trial courts should give Rule 12(b)(1) motions precedence." Dynamic Image Technologies, Inc. v. U.S., 221 F.3d 34, 37 (1st Cir. 2000).  Motions under Rule 12(b)(1) are brought forth to attack two different types of defects:  the pleader's failure to comply with Federal Rule of Civil Procedure 8(a)(1)[7] and the Court's actual lack of subject matter jurisdiction – which may exist despite the formal sufficiency of the allegations in the complaint.  5A JAMES WM. MOORE ET AL., MOORE'S FEDERAL PRACTICE § 1350 (2d ed. 1990).   When the grounds for a Rule 12(b)(1) motion is lack of diversity and/or federal question, as is the case at bar, the pleader must show that the counterpart's claim does not fall under the category of federal question, and that at least one defendant is a citizen of the same State as at least to one plaintiff.  That is, "the party invoking the jurisdiction of the federal court carries the burden of proving its existence." Nater v. Riley, 114 F. Supp.2d 17, 19 (D.P.R. 2000).  See Miller v. Hygrade Food Products, Corp., 89 F. Supp. 2d 643 (E.D. Pa. 2000); Smith v. SSA, 54 F. Supp.2d 451 (E.D. Pa. 1999); Kronmuller v. West End Fire Co. No.3, 123 F.R.D. 170 (1988).  Further, even though the factual allegations of the complaint are presumed to be true and the complaint is reviewed to ensure that each element necessary for jurisdiction is present, when the factual allegations of jurisdiction are attacked by a Motion to Dismiss under Rule 12(b)(1), courts are not limited in their review to the mere allegations contained

---

3. Failure to comply with Rule 8(a)(1) occurs when the allegations in the complaint are insufficient to show that the federal court has jurisdiction over the subject mater of the case.  That is, the complaint is in fact defective and must be dismissed regardless of the actual existence of subject matter jurisdiction unless said deficiency is cured.  See Sierra Club v. Shell Oil Co., 817 F.2d 1169 (5th Cir. 1987).

in the complaint. Thus, "the Court, without conversion [to summary judgment], may consider extrinsic material and, to the extent it engages in jurisdictional fact finding, is free to test the truthfulness of the plaintiff's allegations." *See* Dynamic Image, 221 F.3d at 37; Halstead v. Motorcycle Safety Foundation, Inc., 71 F. Supp.2d 464, 468 (E.D. Pa. 1999) ("[A]ny evidence may be reviewed and any factual disputes resolved regarding the allegations giving rise to jurisdiction, since it is for the Court to resolve all factual disputes involving the existence of jurisdiction."). If, and only when, it appears that the non-moving party will not be able to assert a colorable claim of subject matter jurisdiction, may the Motion to Dismiss be granted and the complaint dismissed. *See* Mortensen v. First Federal Savings and Loan Association, 549 F.2d 884 (3d Cir. 1977).

When deciding a Motion to Dismiss, the Court must accept as true all well-pleaded factual claims and indulge all reasonable inferences in plaintiff's favor. *See* Viqueira v. First Bank 140 F.3d 12, 16 (1st Cir. 1998). As established above, once a defendant files a motion contesting the Court's subject matter jurisdiction, pursuant to Federal Rule 12(b)(1), it is plaintiff's burden to establish that the Court has jurisdiction. That is, although a formal hearing is not required, the challenge should not be granted without providing the nonmoving party the opportunity to present the facts in support of his jurisdictional contention either by deposition, affidavit or an evidentiary hearing. *See* Berrios v. Department of ARMY, 884 F.2d 28, 33 (1st Cir. 1989). Therefore, if jurisdiction is asserted pursuant to diversity (28 U.S.C.A.§1332) plaintiff has to establish that there is **complete diversity** and that his or her claim exceeds the jurisdictional amount. *See* St. Paul Mercury Indem Co. v. Red Cap Co. 303 U.S. 283 (1938). The plaintiff has had plenty of opportunity and has filed two motions (Dockets 175-177) seeking to show the court's diversity jurisdiction.

As stated before, Federal Courts are courts of limited jurisdiction. This Court has the

responsibility "to police the border of federal jurisdiction". *See* Spielman v. Genzyme Corp, 251 F3d at 4.  The courts must "rigorously enforce the jurisdictional limits that Congress chooses to set in diversity cases." Del Rosario Ortega v. Star Kist Foods, 213 F.Supp. 2d at 88 (D.P.R. 2002)(*citing* Conventry Sewage Association v. Dworking Realty Co.,* 71 F.3d at 3 (1st Cir. 1995)).  Hence, a party that seeks the jurisdiction of the Federal Courts, has unquestionable duty to demonstrate its existence.  Murphy v. United States, 45 F.3d at 522.

## V.  DISCUSSION

At the outset, the Court is reluctant to grant the request under the summary judgment filed by Royal.  The parties are well aware that a summary judgment necessarily must delve into the merits of the claim while an order to dismiss for lack of subject matter jurisdiction is not.  "[S]eeking summary judgment on a jurisdictional issue, therefore, is the equivalent of asking a court to hold that because it has no jurisdiction the plaintiff has lost on the merits.  This is a non-sequitur."  Winslow v. Walters, 815 F.2d 1114, 1116 (7th Cir. 1987) (*citations omitted*).  It is also equally known that granting a motion addressing a decision on the merits has full *res judicata* effects while granting a motion to dismiss for lack of subject matter jurisdiction is not on the merits – *res judicata* would be, thus, circumscribed to the question of jurisdiction.  Id.  Provided that "the function of the motion, and not the caption, dictates which Rule is applicable", Perez v. Cucci, 932 F.2d 1058, 1061, n.10 (3rd Cir. 1991), **the Court shall, as a conclusion of law, entertain the instant motion for summary judgment as a motion to dismiss for lack of subject matter jurisdiction pursuant to Fed.R.Civ.P. 12(b)(1) and not as a Summary Judgment because challenges to jurisdiction are to be addressed via Fed.R.Civ.P. 12(b)(1) rather than Fed.R.Civ.P. 56.**  *See* Murphy, 45 F.3d 520.

Royal argues that this Court's jurisdiction is lacking as to all of the federal statutes cited by plaintiffs.  First and foremost, the Court has prior hereto decided that it is unwarranted to treat the instant case under admiralty jurisdiction and hence 28 U.S.C. § 1333(1)[8]  can not be utilized by plaintiffs to invoke this Court's federal jurisdiction for an admiralty or maritime question.  *See Opinion & Order*, April 28, 2005 (Docket No. 150).  All allegations relating to Maritime Jurisdiction under 28 U.S.C. § 1333(1)  are not to be considered by the Court since the Court considers that the facts alleged in the complaint do not warrant a conclusion of maritime jurisdiction.  *See Opinion and Order* of April 28, 2005, Docket No. 150, <u>Torres Vazquez v. Commercial Union</u>, 367 F. Supp.2d 231, 234-235.

According to Royal, plaintiffs cannot rest on 28 U.S.C. § 1331[9] as a jurisdictional basis either, for the only federal question alleged by them was circumscribed exclusively to Section 1331(1), all other claims, it insists, are mere state law negligence claims that should be ventilated outside of the federal forum.  After a review of the remaining claims in the complaint, the Court, again, concurs with Royal, thus, there is not federal question jurisdiction pursuant to 28 U.S.C. § 1331 because the facts of the case simply are not covered by any of the plead federal statutes.

---

[8]  **§ 1333.  Admiralty, maritime and prize cases**
> The district courts shall have original jurisdiction, exclusive of the courts of the States, of:
>> (1) Any civil case of admiralty or maritime jurisdiction, saving to suitors in all cases all other remedies to which they are otherwise entitled.
>>
>> (2) Any prize brought into the United States and all proceedings for the condemnation of property taken as prize.

[9]  **§ 1331.  Federal question**
> The district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States.

Royal further continues to aver lack of jurisdiction under 28 U.S.C. § 1337(a)[10] when it is clear from the record that plaintiffs did not, at any point in the pleadings set forth facts to justify a cause of action arising under any Act of Congress regulating commerce or protecting trade and commerce against restraints and or monopolies (this case is a tort casualty case as described in the complaint as related at pages 3-5 of this Opinion).  Again, the Court agrees with Royal's argument and finds that there is no extant jurisdiction pursuant to 28 U.S.C. § 1337(a). (Commerce and Anti-Trust regulations)

The only question remaining before the Court at this point, then, is whether or not the Court possesses jurisdiction in the instant case based on complete diversity of citizenship as required by 28 U.S.C. § 1332.  As explained above, in order for a federal court to be able to exert its jurisdiction under section 1332, the suit brought forth must be between citizens of different States.  It stems from the record that SJIT is incorporated in Delaware.  However, as per its answer to the complaint, its principal place of business is in Puerto Rico.  SJIT, in said answer, goes even further and explains that it performs its business activity, along with all of its operations, within the jurisdiction of Puerto Rico, while specifically denying that it transports via the seas between the ports of San Juan, New Jersey, and Jacksonville.  In its *Amended Third Party Complaint*, SJIT echoes these answers when it pleads that its principal place of business is San Juan, Puerto Rico, and that it executes its terminal operator and stevedore services at the Puerto Nuevo Harbor Development in San Juan, Puerto Rico.  Adding to this is also its *Voluntary Petition for Bankruptcy* which details SJIT's "country of

---

[10] **§ 1337.  Commerce and antitrust regulations; amount in controversy, costs**
(a) The district courts shall have original jurisdiction of any civil action or proceeding arising under any Act of Congress regulating commerce or protecting trade and commerce against restraints and monopolies: *Provided, however,* That the district courts shall have original jurisdiction of an action brought under section 11706 or 14706 of title 49, only if the matter in controversy for each receipt or bill of lading exceeds $10,000, exclusive of interest and costs.

residence or principal place of business" as Puerto Nuevo, Puerto Rico, as well as the "location of [its] principal assets" as San Juan, Puerto Rico. (Royal's Statement of Uncontested Facts, Exhibit 1). Finally, declarations provided by SJIT's general manager and vice president of operations, Mr. Paul Colgan, reiterate that SJIT's business was conducted exclusively in Puerto Rico, its principal place of business. (Royal's Statement of Uncontested Facts, Exhibit 7; *see also* SJIT's *Answer* at ¶8; and *First Amended Third Party Complaint* at ¶1). In sum, it is patent to this Court that SJIT's citizenship for diversity purposes is, by its own uncontroverted facts, undoubtedly Puerto Rico.

Royal's citizenship, as SJIT's insurer, is also Puerto Rico. As Section 1332(c)(1) specifically states:

> in any direct action against the insurer of a policy or contract of liability insurance, whether incorporated or unincorporated, to which action the insured is not joined as a party-defendant, such insurer shall be deemed a citizen of the State of which the insured is a citizen, as well as of any State by which the insurer has been incorporated and of the State where it has its principal place of business[.]

28 U.S.C. § 1332(c)(1). Hence, being the claims against Royal pursuant to Puerto Rico's direct action statute, and, being SJIT's State of citizenship deemed as Puerto Rico, Royal's State of citizenship for diversity purposes is by virtue of law instantly transformed in the instant case to Puerto Rico. Dismissal for lack of jurisdiction, therefore, is warranted for complete diversity has been truncated as plaintiff and both defendants are citizens of Puerto Rico.

Finally, even accepting that SJIT is a subsidiary to The Holt Group, Inc., the same conclusion must be reached. As has been established previously, a subsidiary's citizenship does not necessarily correlate to its parent company's State of citizenship. As the First Circuit has adopted, "where there is no evidence that the integrity of the corporate form has been violated, the separate corporate identities of a parent and a subsidiary should be honored when determining either one's principal

place of business." <u>Taber Partners, I</u>, 987 F.2d 57, 61 (1st Cir. 1993); *see also* de Walker v. Pueblo

Int'l, Inc., 569 F.2d 1169, 1170-73 (1st Cir. 1978).  Considering that plaintiffs have not, at any point

of these proceedings, pursued the piercing of SJIT's corporate veil, the Court must adhere to the First

Circuit's mandate.  As such, the Court deems that the parent company and SJIT have both preserved

their separate corporate identities conclusively depriving this Court of diversity  jurisdiction in the

instant case.

## VI.  CONCLUSION

For the reasons set forth above, the Court hereby **DISMISSES WITH PREJUDICE** all of

plaintiffs purported claims under federal statutes.

The dismissal of Plaintiffs' federal claim leaves only Plaintiffs' claim under Puerto Rico law.

Pursuant to 28 U.S.C. §1367(c) and <u>United Mine Workers of America v. Gibbs</u>, 383 U.S. 715, 725,

86 S.Ct. 1130, 1138 (1966), the Court declines to exercise supplemental jurisdiction over Plaintiffs'

Commonwealth claims against Defendant.  Since the remaining claims are exclusively State law

claims, this Court prefers that the state courts with better local law expertise decide the matter.[11]

---

[11]  This Court is overly extended by its criminal docket.  It is well documented that this District continues to lead the nation in multiple defendants actions.  Accordingly, the Court prefers to attend exclusively federal claims within its jurisdiction "[i]n an era of burgeoning case loads and thronged dockets. . ." <u>Oconnell v. Hyatt Hotels of Puerto Rico</u>, 357 F.3d 152, 155 (1st Cir. 2004)  rather than tackle pendnet state claims.  The Court is aware that the instant case has been in its docket for over six (6) years and that it is dismissing the federal claims somewhat late (on the eve of trial).  However, this is only because of the  multiple plaintiff's amendments to the complaint and the bankruptcy proceedings, together with the reiterated lack of cooperation of subpoenaed non-party witnesses.

Accordingly, Plaintiffs' claims under Puerto Rico Law are **DISMISSED WITHOUT PREJUDICE**.

Judgment will be issued accordingly.

**IT IS SO ORDERED.**

In San Juan, Puerto Rico, this 17th day of February of 2006.

<u>s/Daniel R. Dominguez</u>
**DANIEL R. DOMINGUEZ**
**U.S. DISTRICT JUDGE**